[Cite as *State v. McManes*, 2024-Ohio-438.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Andrew J. King, J. |
| -vs- | |
| | Case No. CT2023-0054 |
| RONALD McMANES, JR. | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No. CR2023-0172


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     February 8, 2024


APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

RONALD L. WELCH                          APRIL F. CAMPBELL
PROSECUTING ATTORNEY              545 Metro Place South
JOHN CONNOR DEVER                    Suite 100
ASSISTANT PROSECUTOR              Dublin, Ohio  43017
27 North Fifth Street, P. O. Box 189
Zanesville, Ohio  43702

*Wise, J.*

**{¶1}** Defendant-Appellant, Ronald McManes, Jr. appeals his conviction and sentence of one count of having weapons under disability and one count of aggravated possession of drugs.  Plaintiff-Appellee is the State of Ohio.  For the reasons that follow we affirm.

**FACTS AND PROCEDURAL HISTORY**

*Traffic Stop*

**{¶2}** On March 5, 2023, Deputy Sheriff Graham Schaumleffel was dispatched to 54 Ann Circle, Muskingum County, Ohio for a report of a stolen motor vehicle.  There, he met with a Peter Huff who reported that his truck was stolen.  Huff gave a description of the truck including the license plate number and possible suspect and the Deputy Sheriff put out a BOLO alert for the truck. Tr. II, 257-259.  About an hour later, Lieutenant Wade Kanavel saw the truck coming across the Philo bridge continuing southbound on Front Street.  There were two males in the front seat, and he recognized the driver, Nicholas Locke, who had some outstanding warrants.  Kanavel called for backup and made the traffic stop. Tr. II, 311.

**{¶3}** Kanavel ordered the driver, Nicholas Locke, out of the truck, put him in handcuffs and placed him in the back seat of his patrol car.  He then ordered the front seat passenger, Ronald McManes, Jr., out of the truck and placed him in handcuffs. Tr. II, 312.

*Search of truck*

**{¶4}** Kanavel quickly searched the truck for contraband and found five rounds of live ammunition on the floorboard underneath the front passenger seat, Tr. II, 314, 318.

Deputy Zachary Keylor joined the search, moved the driver's seat back and saw a .357 magnum silver Taurus revolver laying between the passenger's seat and the driver's seat. Tr. II, 267, State's Exh. 25. The cylinder was empty. Tr. II, 302. Later, a box of ammunition for the revolver was found in the truck. Tr. II, 303.

*Investigation*

{¶5} McManes was searched, and a Nissan key fob with six keys attached and a folded-up gum wrapper were found in his right jacket pocket. Tr. II, 316. The gum wrapper was opened and a small amount of a white crystal substance was found, later identified as 0.15 grams of methamphetamine. Tr. II, 314, 334, State's Exh. 29.

{¶6} McManes denied that the Taurus revolver was his, stating that he was a convicted felon and would not have entered the truck if he knew a gun was in it. Tr. II, 318. The serial number from the revolver was run through a nationwide database, and it was learned that the revolver was reported stolen out of Licking County in 2020. Tr. II, 315. McManes also denied that the methamphetamine was his and that someone else was wearing the jacket the previous day. Tr. II, 319.

{¶7} Nicholas Locke testified at trial that the revolver and ammunition belonged to McManes, Tr. II, 216.

*Indictment and Trial*

{¶8} On March 15, 2023, the Muskingum County Grand Jury indicted Appellant, Ronald McManes, Jr., on two counts of receiving stolen property, a violation of R.C. 2913.51 [F4), one count of having weapons under disability, a violation of R.C. 2923.13 [F3], one count of aggravated possession of drugs, a violation of R.C. 2925.11 [F5] and one count of improperly handling a firearm in a motor vehicle, a violation of R.C. 2923.16

[F4]. The receiving stolen property and aggravated possession of drugs counts attached a one-year firearm specification, R.C. 2941.141(A). Nicholas Locke was indicted as a co-defendant on several of the same charges. Indictment, March 15, 2023.

{¶9}   McManes pleaded not guilty, and the case proceeded in the Muskingum County Common Pleas Court, Judge Cottrill presiding. By judgment entry dated March 23, 2023, the case was set for trial on May 16, 2023. The judgment entry also stated that all pre-trial motions were to be filed no later than fourteen (14) days prior to the first day of trial. Local Crim.R. 6 also required that all requests for continuances must be made fourteen (14) days before the scheduled trial date.

{¶10} McManes was determined to be indigent, and an attorney was appointed to represent him. Journal Entry March 23, 2023. McManes' court appointed attorney filed various pleadings on his behalf.

{¶11} On April 20, 2023, Attorney Samuel Shamansky filed a notice of appearance, apparently being privately retained by McManes.

{¶12} On May 9, 2023, Attorney Shamansky filed a motion to continue the trial claiming that he was scheduled to appear as counsel in a murder trial in Franklin County that had been scheduled since November 10, 2022. The motion stated the state did not object to the continuance, and that McManes would sign a waiver of his right to a speedy trial prior to the pretrial conference set for 11:00 am that day. The motion and subsequent waiver apparently signed by Appellant contains the names of both Attorney Shamansky and Attorney Lucas D. Trott Motion, May 9, 2023; Waiver, May 9, 2023. [1] The motion to

---

[1] Appellant has not provided this Court with a copy of the transcript of any pretrial hearing.

continue was overruled by the trial court, and the jury trial began on May 16, 2023. Attorney Lucas D. Trott represented McManes.

**{¶13}** McManes registered no objection to his representation by Attorney Trott and no renewed motion to continue the trial, either oral or written, appears in the record.

**{¶14}** Six witnesses testified on behalf of the state, including Nicholas Locke who, on May 8, 2023, pleaded guilty to several counts including receiving stolen property for the theft of the truck, Tr. II 238. One rebuttal witness was called by the state. Two witnesses testified on behalf of Appellant.

**{¶15}** After hearing the evidence and receiving instructions from the trial court, the jury returned with a verdict of guilty to one count of weapons while under disability and one count of aggravated possession of drugs. McManes was found not guilty of the remainder of the indicted charges, including the firearm specification and improper handling of a firearm in a motor vehicle. The receiving stolen property counts were dismissed by the state.

**{¶16}** On July 10, 2023, McManes returned to the trial court for sentencing. When asked if he was being represented by Attorney Lucas Trott, McManes replied that he was. Tr., Sentencing, 3. Attorney Trott then explained that while Appellant still maintained his innocence, he admitted to a drug problem. Tr., Sentencing, 8. When asked by the trial court whether he had anything to say, McManes replied that he didn't know the gun was in the truck and didn't know his nephew had stolen the truck. Tr., Sentencing, 10. He made no statement concerning his conviction of aggravated possession of drugs.

**{¶17}** The trial court then reiterated his convictions – having a weapon while under disability and aggravated possession of drugs. The court then said: "Again, you were

found guilty at trial. Clearly you take no responsibility because you're still maintaining your innocence here today. I'll also note I've received the presentence investigation. I have reviewed it thoroughly". Sentencing Tr. 11.

**{¶18}** The trial court then reviewed Appellant's past criminal record, including charges for receiving stolen property, tampering with evidence, theft of a motor vehicle, breaking and entering, escape, drug abuse, resisting arrest, shoplifting, criminal damaging and 50 misdemeanor convictions. Sentencing Tr., 11-13. When asked if "all that sounded right", Appellant replied that it did saying [T]hat sounds right, Your Honor." Sentencing Tr., 13.

**{¶19}** The trial court sentenced Appellant to a prison term of thirty-six months on the weapons under disability charge and twelve months on the aggravated possession of drugs to be served consecutive for a total prison term of forty-eight months.

**{¶20}** McManes filed this timely appeal alleging three assignments of error:

**ASSIGNMENTS OF ERROR**

**{¶21}** I. THE TRIAL COURT IMPROPERLY CONSTRUED MCMANES' MAINTAINING HIS INNOCENCE AS A LACK OF ACCEPTANCE OF RESPONSIBILITY RENDERING ITS SENTENCE CONTRARY TO LAW.

**{¶22}** II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED MCMANES' MOTION TO CONTINUE HIS TRIAL DATE.

**{¶23}** III. THE TRIAL COURT FAILED TO ADVISE MCMANES OF ALL OF THE POSSIBLE PENALTIES HE COULD RECEIVE IF HE VIOLATED THE TERMS OF POST RELEASE CONTROL.

**I.**

{¶24} In his first assignment of error, Appellant argues that his sentence of forty-eight months was contrary to law because the trial court improperly considered his claim of innocence as lack of remorse. In support, McManes relies on the Ohio Supreme Court's holding in *State v. Brunson,* 171 Ohio St.3d 384, 2022-Ohio-4299, 218 N.E.3d 365 (holding that trial court erred when it considered defendant's decision to remain silent and waive allocution in finding that he lacked remorse).

*Standard of Review*

{¶25} Because Appellant did not object at sentencing, the trial court did not consider this claim. McManes brings it to this reviewing court's attention for the first time in this appeal.

{¶26} Accordingly, we will consider it under a plain error standard. *Brunson, supra,* ¶ 67 ("We find that Brunson has forfeited all but plain error because his attorney failed to object to this specific sentencing issue at trial. *West,* 168 Ohio St.3d 605, 2022-Ohio-1556, 200 N.E.3 d 1048, at ¶ 2."). Plain error requires a showing that there was an error, that the error was plain or obvious and that but for the error, the outcome of the proceeding would have been different, i.e, "a reasonable probability that the error resulted in prejudice." Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804, syllabus.

*Brunson Holding*

{¶27} In *Brunson,* defendant was found guilty by a jury of an assortment of felonies including three counts of aggravated murder, one count of murder, six counts of

aggravated robbery, seven counts of kidnapping, three counts of felonious assault and two counts of aggravated burglary. The convictions stemmed from the murder of a bartender and the robbery and assault of patrons of a Cleveland area bar.

**{¶28}** A pre-sentence investigation was ordered and reviewed by the trial court. At the sentencing hearing, the trial court concluded that Brunson lacked remorse saying "[Y]ou killed her and you have no remorse. That's what I don't understand. You have no remorse. You don't acknowledge what you did. The PSI [presentence investigation report] you don't want to talk to them and tell them about anything you did." *State v. Brunson,* 8th Dist., Cuyahoga No.107683, 2020-Ohio-5078, ¶ 71.

**{¶29}** When defense counsel told the trial court he advised Brunson not to discuss the case with the probation officer, the trial court concluded: "And so to the extent that you advised him not to speak to the probation officer, I will no longer include that as part of my sentencing basis therefor." *Id.* ¶ 72.

**{¶30}** The trial court then asked defense counsel whether he advised Brunson to remain silent during sentencing and defense counsel said no. The trial court then said: "And he chose nonetheless not to speak this morning, not to allocute, not to acknowledge anything he had done, not to express any kind of remorse to anyone in this courtroom…" *Id. ¶ 72.*

**{¶31}** On that basis, the trial court concluded that Brunson's failure to speak at the sentencing hearing demonstrated his lack of remorse. He was sentenced, inter alia, to life in prison without parole based on multiple sentencing factors, including a prior criminal record and the violence of the present crime.

**{¶32}** Brunson appealed to the Eighth District Court of Appeals on multiple assignments of error, including that the trial court violated his constitutional rights by considering his silence during sentencing as lack of remorse. *Id.* ¶ 71.

**{¶33}** The Eighth District found no error holding that the trial court may permissibly consider "lack of allocution at sentencing" for the purpose of assessing an offender's remorse and a proper consideration under the sentencing factors of R.C. 2929.12(D)(5), *Id.* ¶ 75.

**{¶34}** The Ohio Supreme Court accepted three propositions of law for review, including whether the self-incrimination clause [United States Constitution] forbids a sentencing court from considering defendant's silence at the sentencing hearing as lack of remorse.

**{¶35}** Put another way: "Whether a trial court violates a defendant's Fifth Amendment right to remain silent when it considers that defendant's silence in its determination that the defendant shows no genuine sadness, guilt, or regret for committing the offense." *Brunson,* 171 Ohio St.3d 384, ¶ 72.

**{¶36}** On appeal, the Ohio Supreme Court held that "when a defendant has maintained his or her innocence by pleading not guilty and has taken the case to trial, the trial court errs when it considers the defendant's silence to be a demonstration of that defendant's lack of remorse for purposes of sentencing under R. C. 2929.12(D)(5)." *Id.* ¶ 83.

**{¶37}** The Court concluded that to consider the defendant's silence as a lack of remorse would create a negative inference regarding the factual determinations in the

case – an inference forbidden under *Mitchell v. United States,* 526 U.S. 314, 328-330, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).

**{¶38}** But the *Brunson* Court held that despite this error by the trial court, the defendant was not entitled to a new sentencing hearing, noting that lack of remorse is only one of five factors a trial court considers when evaluating the defendant's risk of recidivism under R.C. 2929.12(D).   When the defendant was under state supervision when the crime was committed, the defendant's criminal history, the defendant's response to sanctions and the defendant's substance-abuse issues related to the offense are also considerations. R.C. 2929.12(D)(1). *Id. ¶* 85.  The seriousness of the offense and other factors to achieve the purposes and principles of sentencing are also factors considered by the trial court at sentencing. *Id. supra, ¶* 86.

**{¶39}** The *Brunson* Court concluded that even without the lack of remorse consideration, the outcome of the sentencing hearing would not have been different and declined to remand the case for a new sentencing hearing.  The Ohio Supreme Court, with no dissenting opinion, affirmed the decision of the Eighth District Court of Appeals. *Id. ¶* 90.

**{¶40}** In post-*Brunson,* the Second District Court of Appeals and the Eleventh District Court of Appeals have held that where a defendant pleads guilty, inferring a lack of remorse from his silence at sentencing does not violate the Fifth Amendment.  *State v. Lowery,* 2nd Dist., Clark No. 2023 CA-4, 2023-Ohio-4444, ¶ 5 (defendant pled guilty and refused to identify an accomplice at sentencing); *State v. Gurto,* 11th Dist., Ashtabula No. 2022-A-0045, 2023-Ohio-2351, ¶ 19-21.  In *State v. Holland,* 2nd Dist., Montgomery No. CA No. 29791, 2023-Ohio-4834, ¶ 89, where the defendant was found guilty after a jury

trial, the Second District found no basis to conclude that the trial court drew negative inferences from defendant's silence at sentencing.

{¶41} With *Brunson* in mind, we review Appellant's assignment of error.

*Brunson analysis*

{¶42} A *Brunson* analysis begins with the finding that the standard of review is plain error, i.e, would the outcome have been different. This Court finds no plain error here.

{¶43} First, the facts here are distinguishable from *Brunson.* Appellant did not remain silent when given a chance to allocute during the sentencing hearing. Instead, he continued to argue the facts of the case. Sentencing Tr. 10. The Ohio Supreme Court has held that "renewed challenges to the adjudication of guilt are not a proper part of allocution." *State v. Beasley,* 153 Ohio S.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 204.

{¶44} Second, it is clear from the record that the trial court carefully considered the factors related to defendant's risk of recidivism. Defendant did not argue innocence of the drug problem that related to the offense. There was testimony he was on his way to buy drugs, and there was methamphetamine found in his jacket pocket at the time of the traffic stop. His attorney acknowledged his substance abuse problem. Indeed, the record shows that Appellant was denied a bond and spent over 100 days in jail because he tested positive for drugs after his arrest.

{¶45} So, too, the trial court noted his lengthy criminal record including time spent in prison for felonies and at least 50 misdemeanor convictions that Appellant acknowledged as accurate.

**{¶46}** The trial court considered the principles and purposes of sentencing and imposed a sentence within the statutory range. Given appellant's lengthy criminal record and his substance abuse issues, the outcome of the sentence would not have been different, even if the trial court remarked on his failure to take responsibility at his sentencing hearing.

**{¶47}** The first assignment of error is overruled.

**II.**

**{¶48}** In his second assignment of error, McManes argues that the trial court abused its discretion when it overruled his motion to continue the jury trial filed eight days before the trial was to begin.

*Standard of Review*

**{¶49}** Appellant acknowledges that a grant or denial of a continuance of a trial is reviewed by this Court under an abuse of discretion standard. *State v. Unger,* 67 Ohio St. 2d 65, 423 N.E.2d 1078 (1981); *State v. Sowders,* 4 Ohio St.3d 143, 337 N.E.2d 116 (1983; *State v. Zinn,* 5th Dist., Perry No. 18 CA-00001, 2018-Ohio-4191, ¶ 16.

**{¶50}** In evaluating a motion for a continuance, the trial court should consider the following: (1) the length of the delay requested: (2) whether other continuances have been requested or received: (3) the inconvenience to the litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether its dilatory, purposeful or contrived; (5) whether defendant contributed to the circumstances that gave rise to the request for a continuance and (6) other relevant factors, depending on the unique facts of each case. *Unger, supra,* at 67-68. The United States Sixth Circuit has added two more considerations: Whether denying the

continuance will result in an identifiable prejudice to the defendant and the complexity of the case. *Powell v. Collins,* 332 F.3d 376, 396 (6th Cir., 2002).

**{¶51}** Abuse of discretion is defined as an attitude that is arbitrary, unconscionable or unreasonable. A decision is unreasonable if there is no sound reasoning process that can support the decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process persuasive. *AAAA Enterprises Inc. v. River Place Comm. Redevelopment,* 50 Ohio St. 3d, 157, 161, 553 N.E.2d 597 (1990).

**{¶52}** In evaluating whether the trial court has abused its discretion in denying a continuance, appellate courts apply a balancing test, considering the interest of judicial economy, the prompt and efficient administration of justice with the defendant's right to counsel and a fair trial.

**{¶53}** In *State v. Howard,* 5th Dist., Stark No. 2012CA00061, 2013-Ohio-1972, this Court recognized this balancing test:

> With increasing frequency, trial courts are facing the issue of balancing the court's discretionary power to control his docket and trials in his court and the defendant's right under the Sixth Amendment to counsel. Frequently the issue arises upon a question of eleventh-hour continuance. (citations omitted).

**{¶54}** *Id. ¶* 38.

**{¶55}** In *Morris v. Slappy,* U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610, Justice Burger recognized that there are limitations on the rights of an accused to counsel of his choice. The Court reversed the decision of the Court below that the trial judge abused his

discretion by denying a motion for a continuance based on the substitution of appointed counsel six days before trial. A showing of prejudice is required.

*No abuse of discretion*

**{¶56}** Appellant's retained counsel filed a motion to continue the trial some eight days before the trial was to begin in defiance of the pretrial order of the court and Loc. Crim.R. 6, which requires that such a motion be filed at least fourteen days before the trial.

**{¶57}** The docket reflects that subpoenas had been issued for witnesses, and the trial had been scheduled since March, 2023.

**{¶58}** Appellant did not renew the motion to continue prior to trial, either orally or in writing. He made no assertions that he did not acquiesce in being represented by an attorney from the office of his retained counsel. And Attorney Trott was listed as an attorney for appellant on the motion to continue and the waiver signed by Appellant.

**{¶59}** Lastly, and most important, there is no showing that Appellant was prejudiced. Trial counsel vigorously defended Appellant, obtained a transcript of the plea of the state's star witness, Nicholas Locke, to use in cross examination, and presented two witnesses in Appellant's defense. He obtained a not-guilty verdict on several of the counts. Indeed, when asked at the sentencing hearing, McManes replied that Attorney Trott represented him. Tr. Sentencing, 3.

**{¶60}** This Court finds no abuse of discretion by the trial court in denying the motion for continuance of the trial. The second assignment of error is overruled.

**III.**

**{¶61}** In his last assignment of error, Appellant claims that the trial court erred during sentencing when it failed to advise him of all the consequences of violating post-release control (PRC).

**{¶62}** Pursuant to R.C. 2929.19(B)(2)(d) and (c), the trial court is required to notify the defendant at his or her sentencing hearing that the defendant "will" or "may" be placed on PRC depending on the level of the offense. R.C. 2929.19(B)(2)(f) also requires the trial court to notify the defendant that if he or she violates PRC, "the parole board may impose a prison term, as part of the sentence, of up to one-half of the definite prison term originally imposed upon the defendant as the defendant's stated prison term or up to one-half of the minimum prison term originally imposed upon the offender as part of the offender's stated non-life felony indefinite prison term." *State v. Bates,* 167 Ohio St.3d 197, 2022-Ohio-475, 190 N.E.3d 610, ¶ 11. Then, the trial court must incorporate these advisements into the sentencing entry. *Id.* ¶ 12. McManes concedes that the trial court advised him of these provisions of the PRC statute. However, McManes argues that the notice was insufficient because he was not told that violating PRC could result in more restrictive sanctions, a longer period of supervision, or that he could be sent back to prison even if he completed all of his sentenced prison time. R.C. 2967.28(F)(3). App. Brief at 8*.* Appellant admits that such language was contained in his sentencing entry.

**{¶63}** In *State v. Zganjer,* 8th Dist., Cuyahoga No. 94724, 2011-Ohio-606, the defendant-appellant made a similar argument. In affirming the conviction and sentence and rejecting the argument, the Eighth District stated:

R.C. 2967.28(F)(3) lists several options in the event a person violates the terms of postrelease control, among them the following: the court or Adult Parole Authority may impose a more restrictive sanction; increase the duration of the postrelease control; impose a prison term for a single violation that may not exceed nine months; or impose a cumulative prison term for multiple violations of up to one-half of the stated prison term originally imposed upon the offender. The nine-month option applies to single violations of postrelease control; if the offender commits more than one violation (multiple offenses), the court may order a cumulative sentence that does not exceed one-half of the originally imposed prison term.

**{¶64}** Given these options, the General Assembly apparently decided it would be cumbersome to require the courts to advise an offender of every possible option that might occur in the event of a violation of postrelease control. R.C. 2929.19(B)(3) states that 'the court shall notify the offender that if a period of supervision is imposed following the offender's release from prison, as described in division (B)(3)(c) or (d) of this paragraph, and if the offender violates that supervision…, the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed on the offense.' Instead of forcing the sentencing court to delve into the myriad of possibilities that could arise in the event of a future violation of postrelease control, the statute only requires the court to advise an offender of the maximum sanctions that can be imposed in the event of a violation of postrelease control.[2] *Id.* at ¶ 2-3. *Accord State v. Johnson,* 7th Dist., Mahoning No. 15 MA 0197, 2017-Ohio-7701, ¶ 55; *State v.*

---

[2] R.C. 2929.19(B)(3) is now codified as R.C. 2967.28(F)(3).

*Demangone,* 12th Dist., Clermont App. CA2022-081, 2023-Ohio-2522, ¶ 25; *State v. Vest,* 4th Dist., Ross App. No. 22CA32 & 22CA33, 2024-Ohio-62, ¶ 13.

**{¶65}** We find that postrelease control was properly imposed. The trial court was not required to advise him that a PRC violation could result in more restrictive sanctions, a longer period of supervision, or that he could be sent back to prison even if he completed all of his sentenced prison time.

**{¶66}** Appellant cites *State v. Heinzen,* 2nd Dist., Clark No. 2019-CA-65, 2022-Ohio-1341 in support of his argument.  There, the Second District remanded the case for resentencing because the trial court did not advise the defendant that if she violated PRC, she could receive a prison term of up to one-half of the stated prison term originally imposed.  Here, the trial court properly advised McManes that he could be sent back to prison equal to one-half of his original prison term if he violated PRC. Sent. Tr., 14. That was the notification required by statute.

**{¶67}** Appellant's third assignment of error is overruled.

**{¶68}** For the foregoing reasons, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is affirmed.

By: Wise, J.
Hoffman, PJ., and
King, J., concur.


JWW/kt 0205